UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| KARLA L. COSSEY and | ) | 4:02CV661 WKU |
| WILLIAM COSSEY, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | MEMORANDUM AND ORDER |
| vs. | ) | ON DEFENDANT'S MOTION FOR |
| | ) | RECONSIDERATION OR, IN THE |
| ASSOCIATES' HEALTH AND WELFARE | ) | ALTERNATIVE, MOTION TO |
| PLAN; and ADMINISTRATIVE | ) | CERTIFY FOR INTERLOCUTORY |
| COMMITTEE, ASSOCIATES' HEALTH | ) | APPEAL AND TO STAY ACTION |
| AND WELFARE PLAN, | ) | PENDING APPEAL |
| | ) | |
|     Defendants. | ) | |

In a memorandum and order dated March 15, 2005, I resolved the Plaintiffs' Motion for Summary Judgment, (filing 91); the Defendants' Motion to Affirm the Determination of the Administrative Committee or, Alternatively, Motion for Summary Judgment, (filing 18); the Defendants' Supplemental Motion to Affirm the Determination of the Administrative Committee or, Alternatively, Motion for Summary Judgment, (filing 105); and the Defendants' Motion for Summary Judgment on Plaintiffs' Statutory Penalty Claim, (filing 67). (See Mem. and Order on Mots. for Summ. J., filing 141.)   The defendants have now filed a motion requesting that I reconsider a particular determination that I made in that memorandum, or, alternately, that I certify that determination for interlocutory appeal and stay this case while the appeal is pending. (See filing 144.)  For the following reasons, I find that the defendants' motion must be denied.

## I.  BACKGROUND

On April 26, 2004, the plaintiffs, Karla and William Cossey, filed a complaint against Defendants Associates' Health and Welfare Plan ("the Plan") and Administrative Committee, Associates' Health and Welfare Plan ("the Committee"), alleging violations of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (ERISA). (See generally Sixth Am.

Compl., filing 121.) The plaintiffs sought, among other things, a declaratory judgment that the defendants violated their fiduciary duty; a declaratory judgment that the defendants cannot require covered persons or their counsel to sign "subrogation-reimbursement agreements" as a condition to the payment of benefits; an order requiring the defendants to pay fines for their alleged failure to provide the plaintiffs' counsel with copies of certain documents; and an order that the defendants pay, with interest, all medical expenses that arose from an automobile accident suffered by Karla Cossey. (See id. at 15-17.) The parties filed cross-motions for summary judgment, and I resolved those motions in a memorandum and order dated March 15, 2005. (See Mem. and Order on Mots. for Summ. J., filing 141.) At issue presently is my determination in that memorandum that the plaintiffs' motion for summary judgment, filing 91, should be granted in part. (See Mem. and Order on Mots. for Summ. J., filing 141, at 39.) The reasoning underlying this determination is set forth in great detail in the March 15 memorandum; however, in the interest of clarity I have summarized that reasoning, along with certain relevant background information, below.

      The Plan was created by Wal-Mart Stores, Inc. "to provide medical benefits to its employees." (Mem. and Order on Mots. for Summ. J., filing 141, at 1 (quoting filing 19 at 2).) The plaintiffs were eligible to receive benefits under the Plan. After Karla Cossey was injured in a car accident in October 2001, the Plan informed the plaintiffs' counsel that Ms. Cossey's claims for benefits would not be processed until the plaintiffs completed "reimbursement/subrogation" forms and counsel completed a "disbursement agreement." (Id. at 2 (quoting Administrative Record ("A.R."), filing 32, at 167 202).) Counsel refused the Plan's requests and asked the Plan to provide authority for its position that it could refuse to pay benefits if the forms were not executed. (Id. at 3.) The defendants responded via letter dated June 11, 2002, stating,

> The Plan language includes a Right to Reduction, Reimbursement and Subrogation provision, which clearly states 100% reimbursement is required with no reduction for attorneys' fees. This provision further states 100% reimbursement is required regardless of whether the participant was made whole or not as well as that the Plan has first priority from any judgment, payment or settlement. . . .

> Please refer to page 43 of the enclosed Summary Plan Description. There it states, "To aid the Plan in its enforcement of its right of reduction, recovery, reimbursement and subrogation, you and your representative must, at the Plan's request and at its direction: Take any action; give information; and execute documents so required by the Plan. Failure to aid the Plan and to comply with such requests may result in the Plan's withholding or recovering benefits, services, payments or credits due or paid under the Plan." . . .

(Id. at 3-4 (quoting A.R., filing 32, at 167 206).)

The plaintiffs and their counsel refused to execute the forms, and the defendants refused to pay Ms. Cossey's accident-related claims.[1] (See Mem. and Order on Mots. for Summ. J., filing 141, at 4-5.) In addition, after a settlement was reached in Karla Cossey's personal injury action against the party or parties involved her car accident, the Plan informed the plaintiffs that "Ms. Cossey's medical benefits are now subject to reduction since she has obtained a settlement from the third parties responsible for her injuries." (Id. at 5 (quoting filing 107, Ex. A-2 at 3).) Thus, the defendants' decision to deny the plaintiffs' claims for benefits was based upon two separate grounds: 1) the plaintiffs' and counsel's failure to execute the reimbursement/subrogation and disbursement agreements, and 2) the fact that the Cosseys obtained a settlement in their personal injury action.

It is undisputed that the defendants relied upon language that appears only in a Summary Plan Description, or SPD, to support their decision to deny benefits to the plaintiffs. (See Mem. and Order on Mots. for Summ. J., filing 141, at 15-18.) It is also undisputed that the defendants believed that the SPD, or at least the portion of the SPD that contained the relevant language, was "part of the 'Plan.'" (Id. at 21 (quoting filing 107, Ex. C, Loftus Aff. ¶ 3).) In their briefs submitted in connection with the cross-motions for summary judgment, the plaintiffs argued, inter alia, that the SPD was not a part of the Plan. (See id. at 18 (citing filing 91 at 43-44; filing 113, ¶¶ 6, 20-21; filing 117 at 43-48; filing 134).) After carefully studying the "Wrap Document," "Trust Document," and the SPD, I determined that the plaintiffs were correct, and that the portions of the SPD upon which the defendants relied were not part of the Plan. (See id.

---

[1]To be precise, there is some evidence that the defendants may have paid between $100 and $600 in benefits to Karla Cossey. (See Mem. and Order on Mots. for Summ. J., filing 141, at 6.) Her claims amounted to approximately $70,000. (See id.)

3

at 18-27.)[2]  This determination was based upon two principal findings.  (See id. at 18-21.)  First, I noted that "[a]ccording to the Wrap Document, the Plan comprises the Wrap Document itself 'and each Welfare Program' that has been 'incorporated [therein] by reference.'"  (Id. at 18 (quoting A.R., filing 32, at 161 170).)  A "Welfare Program" is defined as "a written arrangement that is offered by one or more Employers and incorporated into the Plan by identification in Appendix A and which provides any employee benefit that would be treated as an 'employee welfare benefit plan' under Section 3(1) of ERISA if offered separately," or "any plan established pursuant to Section 125 of the Code if incorporated herein by identification in Appendix A."  (Id. at 18-19 (quoting A.R., filing 32, at 167 170-71).)  Since the SPD was not listed in Appendix A, I found that the SPD was not a "Welfare Program" that had been incorporated into the Plan.  (See id. at 19, 20.)

Second, I explained that the Wrap Document also provides that certain portions of the SPD would be deemed "Plan documents" if: "1) there is 'no separate formal plan document' that provides the relevant benefits; 2) the relevant portions of the SPD describe the benefits set forth in 'any applicable insurance policy or contract'; and 3) the relevant portions of the SPD are 'consistent with' that policy or contract."  (Id. at 19 (quoting A.R., filing 32, at 167 171).)  As I considered the first criterion, I observed that it was unclear whether a "separate formal plan document" existed.  (See id. at 19-20.)  I stated,

> Turning first to the question of whether there is a "separate formal plan document" that provides the health benefits sought by the plaintiffs, I note that the list of Welfare Programs incorporated into the Plan includes the "Wal-Mart Associates' Group Health Plan."  (A.R., filing 32, at 167 180.)  Although the title of this plan suggests that it may be relevant, and although it is a formal Plan document by virtue of its designation as a Welfare Program in Appendix A of the Wrap Document, the Wal-Mart Associates' Group Health Plan has not been produced.  Indeed, with the exception of the Trust Document, none of the eleven Welfare Programs listed in Appendix A of the Wrap Document is to be found in the record.  At the same time, there is no evidence suggesting that these Welfare Programs do not exist.  On the contrary, the record does suggest that the Welfare

---

[2]The plaintiffs also argued, and I agreed, that the relevant language was not added to the Plan in accordance with the Plan's amendment procedures.  (See Mem. and Order on Mots. for Summ. J., filing 141, at 18, 27-28.)  However, as this determination is not being challenged by the defendants in their motion for reconsideration, there is no need to review it here.

> Programs existed as of January 1, 2001, when the Wrap Document was "restated," and the Welfare Programs were incorporated by reference therein. (See A.R., filing 32, at 167 167; see also id. at 167 180 (incorporating "Wal-Mart Associates' Group Health Plan" into the Plan).) In any event, since the Welfare Programs have not been produced, it is unclear whether there is a "separate formal plan document" that provides health benefits to the Plan participants.

(Mem. and Order on Mots. for Summ. J., filing 141, at 19-20 (footnote omitted).) I also remarked in a footnote that the SPD itself suggested that a separate document called the "Associates' Medical Plan (Network Plan; Network $ Saver Plan)" may have existed, though that document was not produced and was not listed in Appendix A to the Wrap Document. (See id. at 20 n.14.) In any event, I found that, "[e]ven if I were to assume that there is no applicable 'separate formal plan document,' the portions of the SPD relied upon by the defendants would be incorporated into the Plan only to the extent that they describe, and are consistent with, the terms of 'any applicable insurance policy or contract.'" (Id. at 20.) Since there was "no evidence that the relevant portions of the SPD accurately describe an 'applicable insurance policy or contract,'" I concluded that "the relevant portions of the SPD have not been incorporated into the Plan." (Id.)

After analyzing and rejecting each of the defendants' counter-arguments, (see Mem. and Order on Mots. for Summ. J., filing 141, at 21-27), I found that "the defendants' decision to treat the SPD as a formal Plan document was 'contrary to the plan's clear language' and rendered 'the plan's language meaningless or internally inconsistent,'" (id. at 28 (quoting Wald v. Southwestern Bell Customcare Medical Plan, 83 F.3d 1002, 1007 (8th Cir. 1996)). I also found that "[t]here is no evidence that the denials of the plaintiffs' claims were . . . in accordance with the Plan's terms or were based upon a reasonable interpretation of the Plan's terms." (Id. at 29.) I therefore granted the plaintiffs' motion for summary judgment in part, stating, "the defendants' decision to deny the plaintiffs' claims for benefits was not reasonable." (Id. at 39; see also id. at 15 (quoting Wald, 83 F.3d at 1007).)

The defendants now ask that I reconsider my determination that the SPD "does not contain the terms of the Plan." (Filing 144 at 1.) They argue in the alternative that this determination should be certified for interlocutory appeal. (See id.)

## II. ANALYSIS

### A. The Defendants' Motion for Reconsideration

The defendants have identified no rule of federal civil procedure that authorizes their motion for reconsideration. However, even if I assume that the defendants' motion is appropriately made, the defendants have failed to persuade me that my previous determination was erroneous.

The defendants argue, "The court should reconsider its determination that the Associates Benefits Book [i.e., the SPD] does not contain some of the terms of the Plan because this ruling was based upon the erroneous finding that a document called the 'Wal-Mart Associates' Group Health Plan' exists and was not produced in this case." (Filing 145 at 2. See also id. at 4 ("The Court was mistaken in concluding that a 'separate formal document' exited – the Wal-Mart Associates' Group Health Plan – and assuming that this document has not been produced."); filing 190 at 2 ("The Court's decision was based on the assumption that additional Plan documents did exist. . . . Since Defendants have shown that no additional Plan documents exist, as assumed by the Court in its Order, the Court has new, additional evidence on which to consider its decision (i.e., that a document called the "Wal-Mart Associates' Group Health Plan" does not exist.)" (Emphasis omitted)).) In support of this argument, the defendants have submitted "additional evidence"[3] that, they claim, establishes that "[a]ll documents that contain 'Plan terms' were previously produced to Cossey and are part of the record here." (Filing 145 at 1, 4 (citations omitted).) However, it is plain that the defendants' argument is based upon an erroneous reading of my March 15 memorandum. Quite simply, my determination that the SPD had not been incorporated into the Plan was not based upon a finding that the "Wal-Mart Associates' Group Health Plan," or any other "separate formal document," existed. On the

---

[3] I note in passing that there is no suggestion that this evidence is "newly discovered," such that it would provide a valid basis for relief under Federal Rule of Civil Procedure 60(b)(2). As I have indicated above, it is not clear whether the defendants' motion is meant to be based on Rule 60(b) or any other rule; however, "self-styled 'motions for reconsideration' that [are] not described in any particular rule of federal civil procedure" are often construed to be either Rule 59(e) motions or Rule 60(b) motions. Sanders v. Clemco Indus., 862 F.2d 161, 168 (8th Cir. 1988).

contrary, I gave the defendants the benefit of an assumption that no separate formal document existed.  (See Mem. and Order on Mots. for Summ. J., filing 141, at 20 ("Even if I were to assume that there is no applicable 'separate formal plan document,' the portions of the SPD relied upon by the defendants would be incorporated into the Plan only to the extent that they describe, and are consistent with, the terms of 'any applicable insurance policy or contract.'  The defendants have not identified, submitted, or requested an opportunity to submit any such policy or contract . . . .  Therefore, under the terms of the Plan as stated in the Wrap Document, the relevant portions of the SPD have not been incorporated into the Plan.") (emphasis added).)  Thus, even if the defendants' new evidence establishes conclusively that there are no additional formal Plan documents, this evidence would not affect the determination I reached in the March 15 memorandum.

       The defendants have submitted two additional arguments in support of their motion for reconsideration.  First, they cite Davidson v. Wal-Mart Associates' Health and Welfare Plan, 305 F. Supp. 2d 1059, 1062-63 (S.D. Iowa 2004), for the proposition that "the 'Plan' consists of the terms contained in the Wrap Document and the pertinent portions of the SPD.  (See filing 145 at 4.)  Davidson states,

> For purposes of this lawsuit, the 2002 Summary Plan Description ("SPD") and 2001 Wal-Mart Stores, Inc., Associates Health and Welfare Plan WRAP Document ("WRAP Document") are the applicable versions of the Plan documents.  The SPD and WRAP Document govern the operation of the Plan.

Davidson, 305 F. Supp. 2d at 1062-63.  The defendants would have me defer to the court's finding in Davidson that the SPD is a "governing" Plan document.  However, the court's finding is not supported by an analysis of the Plan documents, and the opening clause of the excerpt quoted above counsels that the court's finding is not meant to carry precedential weight.  In sum, Davidson does not persuade me that I erred in finding that "the defendants' decision to treat the SPD as a formal Plan document was 'contrary to the plan's clear language' and rendered 'the plan's language meaningless or internally inconsistent.'"  (Mem. and Order on Mots. for Summ. J., filing 141, at 28 (quoting Wald v. Southwestern Bell Customcare Medical Plan, 83 F.3d 1002, 1007 (8th Cir. 1996)).

       Finally, the defendants argue,

> Without reconsideration, neither Cossey nor the rest of the participants in the Plan, which is the largest non-governmental health plan in the United States, will have a basis to receive medical benefits since, under the Court's decision as it currently stands, the only document that authorizes the Plan to pay benefits is not part of the Plan.
>
> . . . .
>
> . . . Without clarification and reconsideration, Cossey will be left with no medical benefits because, as it currently stands, the only Plan terms that require and authorize it to pay benefits – the Medical section of the Associates' Benefits Booklet – is not considered part of the Plan. Under the current ruling, the Plan not only is not required, but is not authorized, to pay any benefits on behalf of Cossey. In short, the document that allows the Plan to offset benefits, recover, and subrogate, is the same and only document that requires the Plan to pay benefits.

(Filing 145 at 1-2, 3-4.) In essence, the defendants claim that I must deem the relevant portions of the SPD to be a formal Plan document, even if doing so is in direct conflict with the terms of the Plan, because otherwise the plaintiffs–along with every other participant in the Plan–will be unable to recover benefits.[4]

The defendants' argument depends upon an assumption that if the SPD is not a formal Plan document, it is without effect. The defendants have submitted no authority in support of this assumption, and it strikes me that it is not supported by law. Indeed, courts have held specifically that plans are bound by representations made in their SPDs, even if those

---

[4]In their "Combined Memorandum" in support of their motion for summary judgment and in response to the plaintiffs' motion for summary judgment, the defendants asserted,

> If the Plan argued that it did not have to pay the benefits described in the Summary Plan Description because those benefits are not described in the Wrap Document, this Court would mock such an argument. The Plan could not set up "the Wrap document" as a defense to not paying the benefits described in the Summary Plan Description by arguing that the Summary Plan Description is not part of the "Plan."

(Filing 106 at 52.) The defendants now argue that they cannot pay the benefits described in the SPD because the Wrap Document does not "require and authorize it to pay benefits," (filing 145 at 3), or "inform[] Plaintiffs of the specifics of covered benefits," (filing 190 at 3), and because the SPD is not part of the Plan. It has not escaped my notice that the defendants' new position is similar to the one that they criticized in their "Combined Memorandum."

representations are not in agreement with the underlying "formal" documents, see, e.g., Pierce v. Security Trust Life Ins. Co., 979 F.2d 23, 26-28 (4th Cir. 1992); Barker v. Ceridian Corp., 122 F.3d 628, 633 (8th Cir. 1997), and even if the formal plan documents were intended to control over the SPDs, see Pierce, 979 F.2d at 27 (quoting McKnight v. Southern Life & Health Ins. Co., 758 F.2d 1566, 1570 (11th Cir. 1985); Edwards v. State Farm Mut. Auto. Ins. Co., 851 F.2d 134, 136 (6th Cir. 1988); Hansen v. Continental Ins. Co., 940 F.2d 971, 981-82 (5th Cir. 1991)). Thus, I am not convinced that the defendants cannot pay benefits to any Plan participant due to my determination that the SPD is not a formal Plan document.

  I note in passing that the rule that the SPD controls over the formal plan documents in the event of an inconsistency is designed to fulfill Congress's purpose in enacting 29 U.S.C. § 1022, and is meant to work to the advantage of the plan participants. See, e.g., Glocker v. W.R. Grace & Co., 974 F.2d 540, 542-43 (4th Cir. 1992) (citing Pierce v. Security Trust Life Ins. Co., 979 F.2d 23 (4th Cir. 1992)); Paulson v. Paul Revere Life Ins. Co., 323 F. Supp. 2d 919, 938-40 (S.D. Iowa 2000). The rule does not work to the advantage of an insurer who seeks to rely on provisions of an SPD that are more restrictive than the provisions of the underlying formal documents, particularly where, as here, the insurer represents that the formal documents are controlling in the event of an inconsistency. See Sturges v. Hy-Vee Employee Benefit Plan & Trust, 991 F.2d 479, 481 (8th Cir. 1993) (citing Glocker, 974 F.2d at 543); Glocker, 974 F.3d at 543 ("where the handbook favors the employer, the employer cannot disavow a disclaimer in the handbook representing that the Plan controls; . . . where the Plan favors the employer, the employer cannot invoke the Plan by relying on a disclaimer in the handbook that, contrary to the intent of Congress, designates the Plan as the controlling document."); Paulson, 323 F. Supp. 2d at 939 ("[I]t is equally unfair to permit an insurer to present a document offering more restrictive coverage to its insureds than exists in the actual policy and then rely on a rule favoring the SPD to enforce the more restrictive coverage. Just as the rule allowing enforcement of SPDs helps to ensure that policy summaries are 'sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan,' so does a rule requiring that favorable policy terms be enforced over more restrictive terms in an SPD."). (See also Mem. and Order on Mots. for Summ. J., filing 141, at 24-25.)

In sum, the Wrap Document establishes that "the Plan" means the Wrap Document itself, along with "each Welfare Program incorporated hereunder by reference." (A.R., filing 32, at 167 170.) To be incorporated into the Plan, a Welfare Program must be "incorporated . . . by identification in Appendix A" of the Wrap Document. (Id. at 167 170, 171.) If the word "identification" is given its plain, ordinary meaning, it is obvious that the SPD, or "Associate Benefit Book," is not a Welfare Program that has been incorporated into the Plan "by identification in Appendix A." (See id. at 167 180.) The Wrap Document also describes the circumstances under which any particular portion of the Associate Benefit Book can be incorporated into the Plan. (See id. at 167 171.) Specifically, it states that if there is no separate formal plan document for a Welfare Program–and it appears that the defendants' motion to reconsider is designed mainly to establish that no such separate formal plan document exists–then the Plan includes "any applicable insurance policy or contract and the applicable description of such benefits contained in the Associate Benefits Book . . . to the extent consistent with any applicable insurance policy or contract." (Id.) There has been no showing that the relevant portion of the Associate Benefits Book is "consistent with any applicable insurance policy or contract." I therefore see no reason to alter my determination that the relevant portions of the SPD have not been incorporated into the Plan. Nor am I persuaded that the defendants' decision to treat the SPD as a formal Plan document was not "contrary to the plan's clear language" and did not render "the plan's language meaningless or internally inconsistent." (See Mem. and Order on Mots. for Summ. J., filing 141, at 28 (quoting Wald v. Southwestern Bell Customcare Medical Plan, 83 F.3d 1002, 1007 (8th Cir. 1996)). The record shows that the plaintiffs have been denied benefits based upon terms that appear in an SPD but do not appear in the Plan, despite declarations that the formal Plan documents are controlling. (See, e.g., A.R., filing 32, at 167 24 ("If there is a disagreement between this booklet and the legal documents which define the benefits of these plans, the legal documents will always govern.").) Since it remains true that "[t]here is no evidence that the denials of the plaintiffs' claims were . . . in accordance with the Plan's terms or were based upon a reasonable interpretation of the Plan's terms," (Mem. and Order on Mots. for Summ. J., filing 141, at 29), I shall deny the defendants' motion for reconsideration.

**B.     The Defendants' Motion to Certify the Order for Interlocutory Appeal**

The defendants submit that, if I decline to reconsider my conclusion that the SPD "does not contain the terms of the Plan," (Filing 144 at 1), I should certify my March 15 order for interlocutory appeal to the Eighth Circuit, (see filing 145 at 5.)  However, as the defendants have failed to convince me that it is appropriate to certify the March 15 order for appeal, I must deny their motion.

An interlocutory appeal to the Eighth Circuit may be appropriate if the requirements of 28 U.S.C. § 1292(b) are satisfied.  That section provides, in pertinent part, as follows.

> When a district judge, in making in a civil action an order not otherwise appealable . . . , shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction . . . may thereupon, in its discretion, permit an appeal to be taken from such order . . . .

28 U.S.C. § 1292(b).  "The requirements of § 1292(b) are jurisdictional," and an analysis of these requirements is to be "guided by the policy" that "piece-meal appeals" ought to be discouraged. White v. Nix, 43 F.3d 374, 376 (8th Cir. 1994) (citations omitted).  Thus, "[a] motion for certification must be granted sparingly, and the movant bears the heavy burden of demonstrating that the case is an exceptional one in which immediate appeal is warranted."  Id. (citation omitted).

Section 1292(b) sets forth three criteria that must be met before an order may be certified for interlocutory appeal.  Specifically, the defendants must show that "the order involves a controlling question of law," that "there is substantial ground for difference of opinion," and that "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); see also White, 43 F.3d at 377.  I shall consider each criterion in turn to determine whether the defendants have met their "heavy burden."  White, 43 F.3d at 376

1.     Whether the Order Involves a Controlling Question of Law

The defendants argue that "the Court's holding regarding whether, under the Wrap Document, the Plan terms may consist of portions of the [SPD] and the Wrap Document is

proper for certification for appeal under 28 U.S.C. § 1292(b) because the Court's holding on this issue is inconsistent with the other federal district court decision within this Circuit that has considered the identical presented [sic] here and held contrary to the Court's ruling here." (Filing 145 at 6 (citation omitted).) This argument seems to be directed more toward the question of whether "there is substantial ground for difference of opinion" than it is toward the question of whether "the order involves a controlling question of law." 28 U.S.C. § 1292(b). However, in their reply brief the defendants submit that "an interpretation of an insurance policy is a controlling question of law" for the purposes of § 1292(b). (Filing 190 at 6 (citing Terra Indus., Inc. v. Commonwealth Ins. Co. of America, 981 F. Supp. 581 (N.D. Iowa 1997)).)

The issue that the defendants seek to certify for interlocutory appeal concerns the interpretation of the ERISA plan documents, which is, in this case, a question of law. See, e.g., Barker v. Ceridian Corp., 122 F.3d 628, 634 (8th Cir. 1997) ("Because welfare benefits do not automatically vest as a matter of law, the issue is 'simply one of contract interpretation,' which is a question of law." (Citations omitted)); Jacobs v. Pickands Mather & Co., 933 F.2d 652, 657 (8th Cir. 1991) ("The construction and effect of a contract presents a question of law, unless an ambiguity exists."); Local Union No. 150-A, United Food & Commercial Workers International Union v. Dubuque Packing Co., 756 F.2d 66, 69 (8th Cir. 1985). Therefore, I find that the first criterion for certification has been satisfied.

2.  Whether There Is Substantial Ground for Difference of Opinion

The defendants argue that there is substantial ground for difference of opinion because my order "is contrary to the specific findings in Davidson [v. Wal-Mart Associates' Health and Welfare Plan, 305 F. Supp. 2d 1059, 1062-63 (S.D. Iowa 2004)], contrary to Judge Posner's rationale in Health Cost Controls of Illinois[, Inc.] v. Washington, 187 F.3d 703 (7th Cir. 1999), and in conflict with the new evidence presented here." (Filing 145 at 6.) I am not persuaded.

I have discussed Davidson previously. (See supra Part II.A.) The argument raised by the plaintiffs in the instant case was, evidently, not considered in Davidson, and there is no indication that the court analyzed the Plan's terms before it declared that, "[f]or the purposes of this lawsuit," the SPD and Wrap Document governed the operation of the Plan. Davidson, 305

F. Supp. 2d at 1062-63.  Davidson does not establish that there might be substantial ground for a difference of opinion regarding my analysis of the terms of the Plan.

The defendants' initial brief does not explain precisely why my order of March 15 "is contrary to Judge Posner's rationale in Health Cost Controls of Illinois[, Inc.] v. Washington, 187 F.3d 703 (7th Cir. 1999)."  (See filing 145 at 6.)  However, I did discuss Washington at length in the memorandum accompanying that order, and I found Washington to be distinguishable from the instant case because, inter alia, the Wrap Document specifically provides that the SPD is not a formal Plan document.  (See Mem. and Order on Mots. for Summ. J., filing 141, at 23; see also id. at 22-25.)  In their reply brief in support of their motion to certify my order for interlocutory appeal, the defendants argue that Washington is no longer distinguishable in light of the new evidence that the defendants have submitted:

> When the Court found Washington distinguishable, however, it did so with the mistaken belief that plan documents were missing from the record.  Based on this incorrect belief, the Court found that relevant portions of the Summary Plan Description were not part of the Plan.

(Filing 190 at 7-8 (footnote omitted).)  It is true that "I [thought] it likely that formal Plan documents [were] missing from the record," given the "Welfare Program" arrangement contemplated by the Wrap Document.  (See Mem. and Order on Mots. for Summ. J., filing 141, at 23.)  It is also true that the defendants have now submitted evidence purporting to establish that, in fact, there are no "missing" formal Plan documents.  However, as I explained above, my determination that the SPD is not a formal Plan document did not depend upon a finding that Plan documents were missing from the record; indeed, I gave the defendants the benefit of the assumption that no additional formal documents existed.  (See supra Part II.A.)  Since my conclusion that the SPD is clearly not a formal Plan document has not been shaken by the defendants' new evidence, it follows that my principal reason for distinguishing this case from Washington remains intact (along with the other reasons cited in the March 15 memorandum).  Thus, I am not persuaded that Washington establishes that there is substantial ground for difference of opinion concerning my order of March 15.

Finally, the defendants claim that there is substantial ground for difference of opinion in light of the new evidence that they have submitted.  For the reasons discussed previously, it is

clear that the defendants' new evidence does not establish that there is substantial ground for difference of opinion concerning my interpretation of the terms of the Wrap Document.  (See supra Part II.A.)

Since the defendants have failed to establish that there is substantial ground for difference of opinion, I must conclude that the criteria for certifying the March 15 order for interlocutory appeal have not been met.

3.   Whether an Immediate Appeal from the Order May Materially Advance the Ultimate Termination of the Litigation

In light of the defendants' failure to establish that there is substantial ground for difference of opinion about the relevant portion of my March 15 memorandum and order, it matters not whether the defendants can establish that an immediate appeal may materially advance the ultimate termination of the litigation.  Indeed, in the absence of substantial ground for difference of opinion, an interlocutory appeal would only serve to delay the progress of this litigation.

For the foregoing reasons, the defendants' motion to certify my March 15 order for interlocutory appeal must be denied.  Since the order will not be certified for interlocutory appeal, there is no reason to stay these proceedings.

**IT IS ORDERED** that the "Defendant's [sic] Motion for Reconsideration or, in the Alternative, Motion to Certify for Interlocutory Appeal and to Stay Action Pending Appeal," filing 144, is denied in all respects.

Dated November 21, 2005.

BY THE COURT


s/ Warren K. Urbom
United States Senior District Judge